## In re EAST RIVER GAS CO. OF LONG ISLAND CITY.

### EAST RIVER GAS CO. OF LONG ISLAND CITY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. May 10, 1907.)

1. EMINENT DOMAIN—COMPENSATION—MEASURE AND AMOUNT.

In determining the amount of compensation to be paid the owner for property taken by eminent domain, the value to the owner of the property is to be ascertained, and not the benefits to be derived by the petitioner from the use of such property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 353, 355.]

2. SAME—PROCEEDINGS—EVIDENCE.

In proceedings to condemn a right of way for a gas company, evidence examined, and held insufficient to support a presumption that the commissioners, in awarding the amount they did, adopted an improper theory of appraisement, or disregarded competent evidence.

Appeal from Special Term, New York County.

Condemnation proceedings to secure easements and rights of way by the East River Gas Company of Long Island City against the city and state of New York. From an order denying its motion to confirm the report of commissioners of estimate and assessment, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

John A. Garver, for appellant.

Theodore Connoly, for the State and City of New York.

Jas. A. Donnelly, for the State.

SCOTT, J. The petitioner appeals from an order of the Special Term denying its motion to confirm the report of commissioners of estimate appointed in this proceeding, and setting aside such report, and referring the matter to new commissioners. The grounds for such order, as recited therein, are:

"For irregularity and error of law in the proceedings before the commissioners, and upon the further ground that the awards herein made are wholly insufficient and inadequate."

Counsel who argue in support of the order appealed from do not call attention to any irregularity in the proceedings before the commissioners, nor to any illegal act by said commissioners, nor to any improper exclusion or admission of evidence; and our own examination of the record fails to disclose any. The only claims of irregularity or error of law in the proceedings is based upon the contention by the respondents that the awards were so grossly and palpably inadequate as to indicate that the commissioners must have proceeded upon an erroneous principle.

The petitioner is authorized, by chapter 338, p. 693, of the Laws of 1892, to supply gas and electricity in the city of New York, and for that purpose, among other things, it is empowered:

"To lay and maintain conductors, mains and pipes under and across the East river, and across any intervening land belonging to the city of New York, or to private persons at such places as it shall determine."

It is also empowered:

"To acquire by condemnation or purchase, such real property, public or private, or right, or interest therein, for the laying and maintaining of its mains, pipes and conductors as may be necessary in the exercise of the powers hereby conferred."

In pursuance of this authority, the petitioner is engaged in constructing a tunnel from the foot of 110th street, borough of Manhattan, to Astoria, on Long Island. This tunnel will be 6,274 feet in length, 40 feet square, and at the mean average depth below tide water of 208 feet, and of a depth in the solid rock of 172 feet below the upper surface of the rock. The tunnel thus passes, in the solid rock, under the East river and under Ward's Island. For convenience of construction and maintenance it is proposed to construct and maintain perpetually a shaft on Ward's Island which will occupy a circular plot of land 40 feet in diameter. There is, and has been for many years, a road on Ward's Island running east and west and terminating at docks or bulkheads on the east and west sides of the island. The property sought to be acquired may be summarized as follows:

Property rights and permanent easements: (1) Lands under water belonging to the state of New York between Astoria and the end of the tunnel on Manhattan Island. (2) Land under water belonging to the city of New York between Astoria and the end of the tunnel on Manhattan Island. (3) Land under the upland of Ward's Island belonging to the city of New York and under lease to the state. (4) Title in fee to a circular plot of land in the uplands of Ward's Island 40 feet in diameter for use as a shaft connecting with the tunnel. (5) A permanent and perpetual easement in a right of way 40 feet wide leading

from the north road, on Ward's Island, to the said shaft, a distance of 170 feet. (6) A permanent and perpetual, but not exclusive, easement to the use of the north road from the above-described right of way to the west channel of the East river, and over the bulkhead at the foot of said road.

Temporary easements: (1) For the use during the construction of the shaft of a plot of land 150 feet in diameter surrounding and concentric with the shaft site. (2) For the right of way during the construction over the north road to the east channel of the East river. (3) For the right to use during construction the dock or bulkhead at the easterly end of the north road for the landing of boats and the handling of material.

The claimants are the state of New York and the city of New York. The state of New York owns the land under the waters of the East river, except the lands under water immediately adjacent to Ward's Island, which belong to the city of New York. The state also holds a lease of Ward's Island for certain purposes.

Ward's Island was conveyed to the city of New York by the commissioners of emigration by a deed dated July, 1893, which contained a condition that it should be forever used for general charitable purposes. It was so used until the passage by the Legislature of chapter 2, p. 1, of the Laws of 1896, entitled "An act for the conversion of the New York City Asylum for the Insane into a state hospital and to establish the Manhattan State Hospital," when the city, in pursuance of the terms of that act, leased the island and the improvements thereon to be used by the state solely as a state hospital for the insane. The act provided that the lease might be terminated by the city upon giving 15 years' written notice, and such notice was given on November 19, 1897. The condition of the title of Ward's Island thus is that the city of New York owns the fee, subject to a condition that it shall be used forever for general charitable purposes, and the state of New York holds a lease, expiring in November, 1912, conditioned for its use solely as a state hospital for the insane.

It is manifest, from a description of the property and of the rights sought to be acquired, that the precise ascertainment of their value was a matter of extreme difficulty, owing to the lack of any standard of comparison. What was to be ascertained was the value to the owner of the property or property rights to be taken from him, and not, as certain of the witnesses seem to have assumed, the benefits direct or consequential to be derived by the petitioner from the use of such property or rights. In arriving at any estimate of the value to the owner, the commissioners were also required to take into account the availability and adaptability in the hands of such owner of the property taken for particular uses and purposes. The only testimony as to value was that presented by the claimants, the present respondents, and much of it, owing, no doubt, to the peculiar circumstances of the case, was very unsatisfactory and to a considerable extent irrelevant. The witness who put the highest value upon the property and easements to be acquired was an engineer, who did not profess to any expert knowledge of the value of real estate. His evidence was directed

to showing the pecuniary advantage that would accrue to the petitioner in the construction of the tunnel by reason of having a shaft on Ward's Island. This evidence, of course, was totally irrelevant to the question as to the value to the city of New York of the land to be taken in fee for the purposes of a shaft site. Two witnesses gave evidence as to the value of the shaft site, basing their estimates upon what they deemed the property would be worth for ordinary commercial purposes if presently available therefor. The commissioners have awarded the largest value placed upon the land on this basis of estimate. For the right to maintain a tunnel under the East river an award has been made to the state of $500, and a like award to the city for the right to maintain the tunnel under Ward's Island. It is not apparent that the tunnel will take anything of any value whatever from either the city or the state, as the value of the petitioner's franchise is not an element to be considered in this proceeding. The awards for the right to maintain the tunnel far below the surface are certainly ample. For the permanent easements of the right to use the already established north road and the docks and bulkheads at the westerly end thereof, and the right of way from the road to the shaft site, the commissioners awarded $1,020. We are unable to say that this award is in any sense inadequate. The evidence upon which a much larger award was demanded by the claimants was of a most unsatisfactory nature, and based upon obviously mistaken theories of valuation, and the same may be said of the award for the temporary easements to last only during the period of construction, for which the commissioners awarded $2,500.

Although the order below recites as a reason for refusing to confirm the report that there had been irregularity and errors of law in the proceedings before the commissioners, and the counsel for the claimants insist that the commissioners proceeded upon a wrong theory of valuation, no errors of law have been pointed out to us, and no suggestion is made, which commends itself to our judgment, as to any theory of valuation which would have produced a result more favorable to the claimants, and, after carefully examining the testimony, we find ourselves unable to say that the awards were so plainly inadequate as to compel the presumption that the commissioners adopted an improper theory of appraisement, or disregarded any competent or relevant evidence as to values. It was not necessary to appoint new commissioners, or even to send the report back to the same commissioners to apportion between the state and the city the awards for the property and interests to be acquired on Ward's Island. That apportionment, if any be necessary, can be made under the provisions of section 3378 of the Code of Civil Procedure.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion to confirm the report of the commissioners granted. All concur.