Russell G. Hunt, J.
The village herein seeks to recover compensation for the appropriation of its real property by the State for the purposes of the State Thruway system. The taking was pursuant to article XII-A of the Highway Law. The map and description of the taking were filed in the Department of Public Works on March 10, 1953; in the Department of State on March 16, 1953; in the Montgomery County Clerk’s office on May 18, 1953; and were served on the village on January 3, 1955. The claim was filed on December 20,1954.
The State resists making payment for the land taken upon the theory that the land was held by the village in its governmental capacity as a public park for the benefit of the general public, *294 and, accordingly, the State may convert it, without compensation to the village, to another public use, i.e., State highway purposes, albeit, a high speed, access controlled and fenced, interstate toll highway.
The State argues that the vacant land purchased by the village in 1932 for $1,100 and located in the Town of Canajoharie was acquired for public park purposes under section 290 of the Village Law entitled ‘ ‘ Acquisition of lands for parks or cemeteries ”. The argument is not supported by facts. A resolution of the Village Board of Trustees was not produced and the deeds to the village do not recite that the acquisition was for park or other particular or limited purposes. There are other provisions of the Village Law which authorize the purchase of real property without limitation upon the use or purpose thereof (except for the general purposes of the corporation) ; see, sections 1-a and 89 (subds. 3, 35-a). Pursuant to the Village Law, villages may acquire real estate for various municipal purposes of local benefit to their inhabitants, such as, for a lighting system (art. 10), for public parking places (§ 89, subd. 18), for a water supply system (§ 89, subds. 6, 16), for an escalator (§ 89, subd. 41-a), and, for a steam plant (§ 89, subd. 70). These are for the private benefit of the inhabitants. The mere fact that a village acquires real estate does not thereby, and, without more, classify the purchase as one in its governmental capacity and for the use of the general public.
The evidence is that the purchase of the land was motivated by the desire to advertise and publicize the village and to attract business for its merchants with resulting benefit to its inhabitants. The Board of Trustees decided that the best way to do this was to encourage the organization of a village baseball team and its participation in a league by providing permanent home grounds for all games. This was done. The land was fenced, a grandstand was built, drain pipe was installed under the playing field and it was otherwise adapted for the playing of baseball. The use thereof was specifically reserved for the inhabitants of the village and permitted only upon express authorization from a village official or agency. A revenue could have been derived from the project and there was 'some testimony in this respect. Was the use a local municipal one? It is found that it was. It is a local municipal purpose, and, for the private benefit of the inhabitants of a village, for instance, in addition to those named above, to ‘ take all measures, do all acts and enact any ordinances ’ ’ for the ‘ ‘ Promotion of public welfare ” in a village, including those for “ the *295 benefit of trade ” (§89, snbd. 59); to set upa“ Publicity fund ” for the purpose of promoting ‘ ‘ the general commercial and industrial welfare of the village ” (§ 89, subd. 28); and to defray the expenses of observing Independence Day (§ 89, subd. 31-a) and Memorial.Day (§ 89, subd. 32).
Proper municipal purpose is not necessarily synonymous with governmental purpose. Land used for a proper municipal purpose does not as a necessary corollary imply that it is devoted to the use of the general public of the State of New York and that for an appropriation thereof compensation need not be made. Just compensation must be made, for example, for the appropriation of an abandoned public street and interference with a municipal water supply (City of Little Falls v. State of New York, 266 App. Div. 87, affd. 291 N. Y. 755), and, for the taking of works from which the municipality, “ can derive a revenue, or which enure to the advantage of its inhabitants rather than to that of the public at large ” (2 Nichols on Eminent Domain [3d ed,], § 5.9, subd. 6). The appropriation of a public street in a municipality for State highway purposes, however, is not within the protection of the Constitution (art. I, § 7) upon the theory that the land so used is for the “ whole public. A street in New York cannot be for the exclusive benefit of the inhabitants of the city, although it may be chiefly for their use and advantage ” (People v. Kerr, 27 N. Y. 188, 200) and compensation therefore cannot be compelled; but, with respect to the Thruway system, see subdivision 11-a of section 347 of the Highway Law, where land ‘ in the bed or beds of any * * streets, roads, highways ” has been appropriated for the purposes of “ the thruway system of the state of New York ”, provision is made for the adjustment of claims therefor by the Superintendent of Public Works and the filing of claims in the Court of Claims.
When the village acquired the land and then operated and maintained it as a baseball field it was not acting “ as an agency of the state for the performance of the strictly public duties devolved upon it by law ” (1 Nichols on Eminent Domain [3d ed.], § 2.225, subd. [1]) and it did not hold the property for the use of the general public. The village held the property in its proprietary capacity for the sole benefit of its inhabitants and itself and the appropriation by the State is compensable (Benson v. Mayor etc. of New York, 10 Barb. 223, 244, 245; Knapp v. Fasbender, 1 N Y 2d 212, 226; Proprietors of Mt. Hope Cemetery v. City of Boston, 158 Mass. 509; 1951 Atty. Gen. 129).
An award is made pursuant to the decision filed herewith.