Caroline K. Simon, J.
Claimant is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, with its principal office and place of business located at 110 Willett Avenue, Port Chester, New York.
This claim is brought for the permanent appropriation by the State of a parcel of land of 2.679 acres, designated as Parcel No. 692, Map 505 in the Village of Port Chester and the Town of Rye pursuant to section 30 of the State Highway Law as *691 amended, for Interstate Route Connection 520, Cross Westchester Expressway, Rye Section. The aforesaid map and description were filed on July 8, 1958 in the office of the Cleric of the County of Westchester, Division of Land Records, on which date title vested in the State.
The claim was timely filed with the Clerk of the Court of Claims on September 14, 1963, and has not been assigned or submitted to any other court or tribunal for audit or determination.
At the opening of the trial the State moved to separate the liability and damage phases of the trial. After claimant’s consent was given and on the facts as stated by the Attorney-General, the motion was granted and only the liability phase of the claim was tried.
The court adopts the description of the appropriated property as shown on the map and description attached to the claim, and the same is incorporated herein by reference.
The property is known as Abendroth Parle. Claimant submitted proof of ownership by means of three deeds: one between Bankers Trust Co., Celia Gould Milne and Richard T. Greene, as executors of the estate of the late Charles A. Gould, and the Village of Port Chester, dated October 13, 1927 and recorded October 20,1927; a second deed between the same three executors and the village dated December 30, 1927 and recorded January 16, 1928; and a third deed between United Hospital, a New York corporation, and the village dated January 5, 1928 and recorded January 16, 1928. A money consideration was paid by the village for each of the parcels.
The court has viewed the property which is a rolling tract of 10.72± acres, T-shaped and slightly wooded in certain portions, with two ungated entrances, at which there were no attendants on the day of the viewing. In 1946, in order to cope with the housing shortage, 0.253± acre of the park was converted to veterans ’ housing and approximately 30 families are presently in residence there.
It was stated at the trial that use of the park’s facilities is limited to residents of Port Chester, and that a part-time guard, responsible for 7 major and 13 minor city parks, visits this park as part of his evening rounds and that his duties include making certain that rules as to its use are observed and that strangers not residents of the village do not use the park. Testimony was adduced that no signs of prohibition limiting park use were on the site in 1958.
Prior to 1958, police officers were assigned to Abendroth Park and patrolled in uniform. It was stated that these officers had *692 strict instructions to order out any people who came to the park from other communities.
The police officer testified that in the small village, with its 25,000 people, he ‘ ‘ can spot strangers ’ ’. The park is in a home neighborhood and until the new State road was built, which cuts along one side, it was in such a location as not to be known to, nor to attract outsiders.
Testimony was presented by claimant that bona fide residents of Port Chester used the park under the supervision of the Recreation Department and that Port Chester organizations were given permits to use the property, by the Superintendent of Parks.
The park was fenced with a chain link 6-foot mesh type galvanized fence; one entrance -was about 30 feet wide and was used by trucks with equipment and also as access to the 6 veterans’ housing- building's in the park, operated by the Village of Port Chester under its Veterans’ Housing Commission. In the park there was also a building containing rest rooms and equipment storage. There was stated to be a chain to close the narrower 15-foot walk-in entrance, a continuation of Touraine Avenue, but both gates were never closed, and the chain was apparently never used. The High Street gate was stated to have been eliminated by the taking. Prior to the taking of what was testified to as having been the best part of the park, it was considered “ well landscaped, had fine trees and was quiet and therefore attracted many people who walked around the park or sat on the benches near the High Street gate.”
The park was used for recreation and for special events by permit, and was rented to local servicemen. Village residents played baseball there at night, according to the Park Superintendent’s testimony, and it was used as a soccer field on Sundays. There formerly had been golf and putting greens which, it was testified, were discontinued in 1958 before the State’s taking of park lands. The park then had a play area with swings, sliding board and sandbox; a softball diamond, a baseball diamond; one hole of what had been a three-hole golf course and picnic areas.
In Summer the Village Recreation Department had a counsellor to work with the children. No fee was charged for permits issued by the Recreation Commission for use of Abendroth Park by individual residents, but prior to 1956 a fee of $25 had been charged for local organizations which were granted permits for use of Abendroth Park, which fee was testified to have been used to help defray park maintenance costs and staff.
*693 The Director of the Recreation Commission also testified to having assigned supervisors to the park for the weekday period from 10:00 a.m. to 8:30 p.m. or when darkness fell. He said the taking area was part of the playground and that prior to 1958 an archery range had been installed there. Now there is no such equipment.
The State has taken land from another Port Chester park, and has reimbursed the municipality for that appropriation. That taking consisted of a portion of Columbus Park described as Map 1700, Parcel 1700. Payment, stated to be in the sum of $21,500, was made to the village on September 21, 1959 upon proof that Columbus Park was held by the Village of Port Chester under a proprietary function, rather than a governmental function. The claimant asserts that the use of Columbus Park was the same as the use of Abendroth Park.
Negotiations toward payment for the instant taking were under way, and an offer of $62,000 was made by the State on June 15,1962, but these negotiations were halted when the State took the position that the municipality’s use of the land had been governmental in nature, and that therefore no reimbursement was to be made.
The village is a subdivision of the State organized for the administration of local government and as such may exercise only those powers conferred by express legislation. Such powers may be governmental or proprietary.
Much confusion continues to exist as to which municipal functions are governmental and which are proprietary or corporate. “ The primary purpose for which a municipal corporation is created, and for the attainment of which the state imposes duties and confers powers upon it, is the maintenance and prosecution of local government within its area. Illustrations of governmental work are found, for example, in the police department, the fire department, and the department of education.” (Elliott, Municipal Corporations [3d ed.], p. 53.)
‘ ‘ When property is held for the attainment of general governmental purpose, it is dedicated to a general public use and in its acquisition and employment the municipality is acting as the State’s agent. According to the weight of authority, public parks are held by cities and towns for the benefit of the general public rather than for that of the municipalities in their proprietary capacity, and may be taken by the legislature and devoted to some other public use without compensation.” (2 Nichols, Eminent Domain [3d ed.], § 5,9, subd. [2], pp. 351-352.)
*694 In the case of Nehrbas v. Incorporated Vil. of Lloyd Harbor (2 N Y 2d 190, 194), Judge Fuld states: “ Whether a particular activity involves a governmental function or one proprietary is a matter not always easy of determination. Past decisions, mostly in the field of tort liability (see, e.g., Brush v. Commissioner, 300 U. S. 352, 362; 18 McQuillin on Municipal Corporations [3d ed., 1950], p. 185 et seq.), prove of little value, and no all-embracing formula or definition is possible. Certain functions, such as the maintenance of public schools, of a fire department and of a courthouse, are clearly governmental. And within the same category is the village’s furnishing of a police force (see Matter of Evans v. Berry, 262 N. Y. 61, 68; see, also, 18 McQuillin, op. cit., p. 290) as well as its maintaining and repairing of its roads ”,
Section 3 of the General Municipal Law became effective on March 8, 1960. It changed the common-law rule to allow compensation to a municipality for land taken for a substantially different purpose from that for which it was held by the municipality. (See City of Albany v. State of New York, 21 A D 2d 224 [1964].)
The claimant herein maintains that it is not governed by the Village Law nor by the General City Law provisions relating to parks, but it is governed by an act passed by the New York State Legislature applying only to the Village of Port Chester and that the parks in Port Chester are proprietary in nature, and have been since the passage of the Port Chester Park Act, chapter 290 of the Laws of 1925, by the State Legislature on April 1, 1925. The title of that act stated: “ an act to provide for the location, creation, acquisition and improvement of parks or parkways in and by the village of Port Chester; authorizing the borrowing of money and issuing of bonds therefor; providing the management and maintenance thereof; creating a commissiv n therefor, and defining the powers and duties of such commission.”
Section 2 of the same act set up a Park Commission and defined its duties. It stated among other things: ‘ ‘ Such commission is empowered to employ and at pleasure discharge such officers and employees as it may deem necessary, and may determine their duties and fix their compensation”.
The claimant emphasizes that the use of the phrase ‘ ‘ for a village purpose ” instead of for a “ State or public purpose ” must be given meaning, and asserts that the grant with fee simple in the village and provision made for taking of highways, utilities, etc., is “ a sweeping grant by the Legislature ” and refers its making this characterization to section 5 of the act. *695 Section 5 states, in part: 16 The title to said lands shall be taken in the name of the village of Port Chester. The term ‘ real estate ’ as used in this act shall be construed to signify and embrace all uplands, lands under water, the water of any lake, pond or stream of water or mill rights or privileges, and any and all easements and incorporeal hereditaments and every estate, interest and right, legal and equitable, in lands or water, including terms for years and liens thereon by way of judgment, mortgage or otherwise, and also all claims for damage for such property. It shall also be construed to include all real property or interest therein heretofore or hereafter acquired or used for railroad, railway, highway or other public or municipal purposes ”.
Section 13 provides permission to let or sell any buildings and grounds attached thereto and the depositing of such income as is derived from licenses or leases with the ‘ ‘ village treasurer, to the credit of said village ’ The claimant cites this permission given by the State Legislature as a further difference from the case of the City of Schenectady v. State of New York (6 Misc 2d 232, 234 [1957]) which city was prohibited from leasing “unless otherwise authorized by the Legislature ”. Claimant further argues that its parks are condemnation proof as far as any other public corporations are concerned.
Claimant emphasizes a further point of difference with the City of Schenectady, which under the General City Law, had to discontinue the use of its park before it could be sold. The court there states (p. 234): “Pleasant Valley Park cannot be sold by the city until it has been discontinued as a park The court also stated (p. 234) that it “finds no special act of the Legislature, or city charter provision to supersede or modify this section
Claimant asserts that under its local law it need not discontinue use of property before it is sold, and refers to the Charter of the Village of Port Chester, which states in section 11 of title III (L. 1868, ch. 818, as amd. by L. 1899, ch. 595): “ The trustees are hereby authorized and empowered to acquire by purchase, lands and buildings for the use of the fire department, and for any other village or corporate purpose, and to acquire title in fee, by condemnation * * #. The said trustees may and shall have power and authority to sell, convey and dispose of any land owned by the village at public atiction, or that may not be necessary for the use of the village or of any department thereof, or that may cease to be used, or be inconveniently located, or for other cause. (Italics added.)
*696 There is ample authority for the proposition that use by the public may mean less than the public of the entire State and may properly be restricted to the public of a particular locality, i. e., or town (Buffalo v. Village of Albion, 28 Misc. 292 [1926]; Hartwell v. Armstrong, 19 Barb. 166 [1854]; Matter of Bloomfield & Rochester Natural Gas Light Co. v. Richardson, 63 Barb. 487 [1872]; Oneonta Light & Power Co. v. Schwarzenbach, 164 App. Div. 548 [1914]; County of Herkimer v. Village of Herkimer, 251 App. Div. 126 [1937]).
In an opinion dated August 17, 1959, the Attorney-General of the State of New York stated that: “Even if there be a presumption that a municipality has acquired land in a governmental rather than a proprietary capacity, any such general presumption may always be overcome by sufficient evidence of all of the factors set forth in the formal opinion of my predecessor dated January 16, 1951, and as applied in the case involving the claim of the Village of Canajoharie v. State of New York, 13 Misc. 2d 293, (1958); affirmed 8 A D 2d 656, (1959).” The court believes the facts in the instant claim overcome the general presumption referred to in the Attorney-General’s comment. “Just compensation must be made, for example, for the appropriation of an abandoned public street and interference with a municipal water supply (City of Little Falls v. State, 266 App. Div. 87, 41 N. Y. S. 2d 882, affirmed 291 N. Y. 755-52 N. E. 2d 963) and for the taking of works from which the municipality can derive a revenue or which enure to the advantage of its inhabitants rather than to the public at large. (Nichols on Eminent Domain, 3rd ed., Yol. 2, Sec. 59, subd. 6) Village of Canajoharie v. State, 177 N. Y. Supp. 2d Series, (1958) p. 799 — at page 801 affirmed 8 A D 2d 656.”
The court finds that the use of the land on which the veterans ’ housing has been built is a proprietary use and that the State must compensate the claimant for land appropriated from this portion of the park.
The court further finds that the balance of the park land taken by the State— an area of 2.426± acres, differs from the facts stated to exist in the City of Schenectady (supra) since this Port Chester land could be sold even before its use as a park had ended, and that the special legislation under which the Village of Port Chester operates made this a different situation.
Further, it was the intent of the claimant to limit the use of the Abendroth Park to residents of the village. In this respect, also, the facts differ from those stated in the claim of the City of New Rochelle v. State of New York (19 A D 2d 674 [1963]). In that case it was found that the appropriated property was *697 used for sewer and drainage facilities, which were stated to affect public health and not limited in their benefits alone to the inhabitants of New Rochelle.
At the end of claimant’s case the State moved to dismiss the claim for failure to show a compensable interest in the village. Decision was reserved on that motion. It is now denied.
At the conclusion of the trial the Attorney-General made a motion to dismiss on the ground that claimant had not presented proof of compensable title. Decision was reserved on this motion. It is now denied. The court finds the State liable in damages for taking village land used for proprietary purposes.
For .the foregoing reasons, it is determined that defendant’s liability in this claim has been established.
The date of trial to assess damages can be agreed upon by the respective parties and the Calendar Judge of the Poughkeepsie district of this court.