Ronald E. Coleman, J.
In a separate decision we have made an award to the Town of Tonawanda in the above-numbered claims. On the trial an issue was raised concerning a deed restriction which affected only a portion of the land taken by the State as shown on a map of the dump site owned and operated by the town. (Claimant’s Exhibit 13.) The restriction affected land westerly of Two Mile Creek Road from which the State made appropriations, the subject of Claims Nos. 44433 and 44474.
On February 21, 1961 the County of Erie conveyed to the Town of Tonawanda by quitclaim deed a tract of land consisting of 110.952± acres for $500 an acre, from which the State appropriated 22± acres. On May 9, 1961 the county conveyed to the town by quitclaim deed three parcels totaling 1.368± acres for $500 an acre for access roads to Ensminger Road, not affected by the State’s appropriation.' Both deeds contained a restriction “ that the premises hereinbefore described are to be used for municipal purposes only.” The 110.952± acres were acquired by the town for the expansion of its sanitary landfill site located immediately easterly of the Two Mile Creek Road and on which there were an incinerator and disposal plant.
On October 5, 1963 the State filed Map 34 R-l and Map 35 thereby appropriating a portion of this land for highway purposes. The result was that what was left of the 110± acres available for expansion of the landfill site was divided into two separate parcels. The claimant established that the land had been acquired for a future expansion of its landfill site and that it would have been used in the near future by it for that purpose. Indeed no proof to the contrary was offered by the State. Claimant also proved that the land appropriated would have to be replaced in order to meet the needs of its sanitary landfill in the near future. Following the appropriation claimant purchased 2.63dz acres of land to replace a part of the land so *5 appropriated which land was in the vicinity of the dump site and was purchased from a private owner at a cost of $7,034 per acre approximately one and one-half years after the appropriation.
Claimant contended that the land should be valued without considering the restriction placed on it by the county in its deed and the State urged that it should be valued in accordance with the restriction as property which only could be used for municipal purposes. In this connection the real estate expert for the State placed upon the land appropriated a value of $500 per acre which by coincidence was the same price paid for the land by the Town of Tonawanda in 1961.
At the time of the appropriation in 1963, section 3 of the General Municipal Law provided as follows: ‘ ‘ Where property of a municipal corporation, school district or district corporation is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation, school district or district corporation, just compensation to the municipal corporation, school district or district corporation shall be made in the same manner, to the same extent and subject to the same limitations as though it were private property(Emphasis added.)
The property appropriated was used for the construction of a limited access highway. The exercise by the State of its power of eminent domain in respect to the 22± acres herein was for a purpose substantially different from that for which the property was used by the Town of Tonawanda. (City of New Rochelle v. State of New York, 19 A D 2d 674, affd. 14 N Y 2d 559; City of Albany v. State of New York, 21 A D 2d 224, affd. 15 N Y 2d 1024.) Now, under section 3 of the General Municipal Law, when land is appropriated by the State from a municipal corporation and used for a purpose other than the use to which it was put by the municipal corporation, the State is required to pay compensation. Just compensation in such a case shall be made in the same manner as though it were private property. We have examined into the history of the amendment to section 3 and find that its main objective was to make it possible for a municipal corporation to be compensated for land appropriated despite the fact that it was being used for a municipal and not for a private purpose. In the section there is no further definition of just compensation aside from the language used therein.
We cannot determine from the wording of the restriction in the deed from the County of Erie whether it was a condition subsequent, a restrictive covenant or something else. Whatever *6 it might be, it is possible that it could have been released or waived by the County of Erie. Certainly, it was the County of Erie that was entitled to enforce this restriction and not the State.
The decisions in cases in this State dealing with what compensation is to be paid for land subject to a limited use appear not to be in agreement. (Matter of Ninth Ave. & Fifteenth St., 45 N. Y. 729 [1871]; Matter of Albany St., 11 Wend. 149 [N. Y. Sup. Ct., 1834]; Matter of East Riv. Gas Co., 119 App. Div. 350 [1907], affd. 190 N. Y. 528.) The State mainly relied upon the East Riv. Gas Co. case and contended that it was held there that the property taken should be valued in accordance with the restriction for charitable purposes. We have examined the record in this case and the testimony of the experts upon which the award was made. The Appellate Division in confirming an award made by Commissioners stated: ‘ ‘ Two witnesses gave evidence as to the value of the shaft site, basing their estimates upon what they deemed the property would be worth for ordinary commercial purposes if presently available therefor. The commissioners have awarded the largest value placed upon the land on this basis of estimate. ’ ’ (119 App. Div. 350, 353.) From this and our reading of the record it would appear that the court relied upon the expert testimony which placed a value on the property the same as any other property without the restriction.
Either way the law is applied might result in a windfall to one or the other party. Recent decisions in other jurisdictions have held that the land subject to a restriction limiting its use to a specific purpose may be valued on an unrestricted basis. (4 Nichols, Eminent Domain [3d ed.], p. 232, § 12.321 esp. n. 15; I Orgel, Valuation under Eminent Domain [2d ed.], p. 185, § 41; Jahr, Eminent Domain, p. 120, § 86).
The problem was discussed at length in an Ohio Supreme Court opinion (Board of County Commrs. v. Thormyer, 169 Ohio St. 291). In that case the court said (p. 299): “ Hence, it appears to us less unreasonable to permit the owner to get a windfall (especially where the appropriator is not required to pay more than the property is worth) than to permit the appropriator to get a corresponding windfall.”
In this claim there is no proof of comparable sales of land in this area sold for municipal purposes only. The only proof before us was that the State’s expert considering the restriction placed a value of $500 an acre on it, denoting this as a nominal value and denying that it had anything to do with the fact that this was the price per acre paid by the town. He readily *7 admitted that there were no similar sales. On the other hand, there was uncontradicted proof that the town had a use for the land appropriated, would have to replace it in the near future and to do so would have to go into the open market paying the fair and reasonable market value for similar land which it already had started to do at a cost of $7,034 an acre. Upon all the facts and circumstances of this claim, just compensation can only mean that the State should be required to pay the fair and reasonable market value of the land appropriated based on the comparable sales for like industrial land in this area. Here •then the result is not a windfall to either the claimant or the State. We have valued the land at $6,000 an acre which we find to be the fair and reasonable market value of the land at the time of the appropriation.