Henry W. Lengyel, J.
This is a claim for the appropriation of claimant’s property pursuant to the Conservation Law of the State of New York. The subject lands were acquired by the State under the Park and Becreation Land Acquisition Bond Act, Project: Clinton 7.1, Town of Peru, Clinton County, New York, Map No. 6693. The appropriation map was filed in the Clinton County Clerk’s office on October 29, 1965 and was served on the claimant on November 15,1965. The claim was filed with the Clerk of the Court of Claims and served on the Attorney-General on September 29, 1966. It has not been assigned. We adopt the description of the appropriated property as shown on the map filed in the Clinton County Clerk’s office, a copy of which was attached to the claim.
Claimant was the purported owner of subject property. There was no record of a deed or condemnation proceeding in the Clinton County Clerk’s office which established claimant’s title to subject property. Apparently, prior to 1927, the town road leading to the shore of Lake Champlain was located south of *50 the appropriated property and ran through the premises of a Celia Sibley Wilson. In response to an offer from Mrs. Wilson to pay for a northerly relocation of said town road, and a petition of town residents requesting such relocation, the town determined to accomplish same. Mrs. Wilson paid the town $2,000 to relocate said road and dock, which was presumably completed in 1928-1929. Claimant also produced the deeds of owners, whose property abutted the relocated town road, which referred to the existence of said town road. After considering the aforesaid deeds, the minutes of the town meetings, the public use of the area as a road and dock, and claimant’s maintenance and repair of the road and dock, we find that claimant established its title to the subject property. (See Highway Law, § 189 ; Smith v. Smythe, 197 N. Y. 457, 461, 462, and Stockwell v. Dunckel, 174 App. Div. 481, 483, 484.)
Said premises contained 0.41 ± acres with 27.92± feet frontage on the east side of Boute 9’ and 49'± feet frontage on the west shore of Lake Champlain. It extended approximately 561 feet from Boute 9 to Lake Champlain. The roadway on said property was 12 feet wide with shoulders 3.5 feet to 4 feet wide and ditches for drainage purposes. In 1938, this was a gravel road surface. In 1941, a bituminous surface was placed on the highway by the Town Highway Superintendent and his work force. The road was maintained on an annual basis and in the same manner as other town roads. In the wintertime the road was plowed. It was used very substantially in the winter by ice fishermen and a farmer who resided on Valcour Island, which was due east of subject property. The dock was constructed of log cribbing, stone and concrete. It was built in about 1934 and was kept in fair repair thereafter. The last repairs were accomplished just before the appropriation in 1965. This work was done by eight young men under the supervision of the Town Highway Superintendent as part of the town youth program. The dock was constructed with its east end section angling to the south to provide wind protection. The main pier extended approximately 104 feet into Lake Champlain and the east end which angled to the south was approximately 27 feet long. There was a boat launching ramp at the southwest corner of the dock and a small graveled parking area.
Claimant had installed several signs at the west end of the roadway, -approximately 5 to 6 feet east of Boute 9, which stated, 1 ‘ Town of Peru Besidents Only. ’ ’ In 1955-1957, the town board permitted a John Manley to moor a houseboat in the dock area. In return for said privilege, Mr. Manley apparently acted as a custodian of the facility. Other than said signs, there was appar *51 ently no control over the area in the winter months. Claimant did not offer in evidence any town ordinances relative to the use of said road and dock.
Claimant’s appraiser valued subject property at $20,000 and found total direct damage of $20,000. The State’s appraiser found a before value and total direct damage of $9,750. The State’s primary position, however, was that claimant had not sustained a legally compensable damage as a result of the appropriation. Its appraisal testimony was offered solely as a safety measure to protect the State, if the court determined that claimant had sustained a legally compensable damage.
The State’s legal position was predicated on section 3 of the General Municipal Law, which provided that:‘1 Where property of a municipal corporation * * * is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation * * * just compensation to the municipal corporation * * * shall be made in the same manner, to the same extent and subject to the same limitations as though it were private property.”
The appropriation herein was made under the Conservation Law and the State has made exactly the same use of the road and dock as was made of it by the Town of Peru, except that the State has refurbished and improved said roadway and dock area. The State contends that, as the appropriated property was not taken for a substantially different purpose, said statute must be followed and compensation may not be legally awarded
to the claimant. (See Governor’s Memorandum approving L. 1960, ch. 180, N. Y. Legis. Ann. 1960, pp. 471-472; Memoranda of State Attorney-General, p. 202.)
The claimant, however, takes the position that said statute applies solely to property of a municipal corporation held in a governmental capacity and does not apply to such property when held in a proprietary capacity.
Prior to the enactment of said statute, the constitutional provision against the taking of private property for public use without just compensation was applicable to property held by a municipal corporation in a proprietary capacity. (See N. Y. Const., art. I, § 7, subd. [a] ; People ex rel. Palmer v. Travis, 223 N. Y. 150, 166; City of Little Falls v. State of New York, 266 App. Div. 87, 91, 92, affd. without opn. 291 N. Y. 755; City of Schenectady v. State of New York, 6 Misc 2d 232, 234, app. dsmd. 9 A D 2d 851; 1 Nichols, Eminent Domain [3d ed.], § 2.225, subd. [1]; 1 Orgel, Valuation Under Eminent Domain, § 42; 26 Am. Jur. 2d, Eminent Domain, § 179.) It was stated in Coimty *52 of Herkimer v. Village of Herkimer (251 App. Div. 126,128, affd. 279 N. Y. 560) :
“ A municipal corporation possesses two kinds of power: (1) Governmental and public; (2) proprietary and private. In the exercise of the former the corporation is a municipal government, while as to the latter it is a corporate legal individual. [Citing cases.]
“ It is said by Nelson, Ch. J., in Bailey v. Mayor, etc., of New York, (3 Hill, 531), that municipal corporations ‘ in their private character as owners and occupiers of lands and houses, are regarded in the same light as individual owners and occupiers, and dealt with accordingly. ’
“ The distinction between ownership * * * for public or governmental purposes, and for purely private or commercial ends, has long been recognized and observed. ’ ’
In our opinion, the 'State’s construction of section 3 of the General Municipal Law clearly deprives a municipality of its constitutional right to just compensation when municipal property held in a proprietary capacity is appropriated by the State and put to a substantially similar use. If we adopted said construction, we would, therefore, be constrained to strike down said statute on the grounds that it conflicted with the State Constitution. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.) However, such is not necessary, as we agree with and adopt the claimant’s construction that section 3 of the General Municipal Law applies only to the property of a municipal corporation held in a public or governmental capacity.
It was stated in Nichols, Eminent Domain (3d ed., vol. 2, § 5.9, p. 346): “In New York the proprietary-governmental test of compensability has been statutorily abandoned as to acquisitions made after 1960. The test now is, as to property government ally owned, that if the taking is for a proposed use which is not substantially different from the existing use, there is no right to compensation; if substantially different, compensation may be had.” (Emphasis added.) (See Town of Tonawanda v. State of New York, 50 Misc 2d 3, 5, affd. 28 AD 2d 644.)
In our opinion, the Legislature, by enacting said statute, sought to rectify the obvious inequities created by the noncompensable appropriation of governmentally held municipal property for a substantially different purpose. Furthermore, the statute refers to just compensation being made “ as though it were private property.” Clearly, this must presume property held in a governmental capacity, for, as set forth above, property held in a proprietary capacity has been considered *53 private property for many generations. We believe our interpretation of said statute is congruent with the settled policy that a statute should be held unconstitutional only as a last resort. (See Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 150, 312.) As stated in People v. Finklestein (9 N Y 2d 342, 345):
‘ ‘ In any event, the statute is at least susceptible of either interpretation, and we are, therefore, clearly obliged by statute and decisional law to embrace that which will preserve its validity. [Citing cases.]
“‘No statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law.’ (People ex rel. Simpson v. Wells, 181 N. Y. 252, 257; Kauffman & Sons Saddlery Co. v. Miller, 298 N Y. 38, 44.) ”
Having determined that said statute relates solely to governmentally owned municipal property, it now becomes necessary for us to apply the proprietary-governmental test to subject property. As stated in Nehrbas v. Incorporated Vil. of Lloyd Harbor (2 N Y 2d 190, 194): “Whether a particular activity involves a governmental function or one proprietary is a matter not always easy of determination.” (See, also, Village of Port Chester v. State of New York, 48 Misc 2d 690, 693, and, Parr, State Condemnation of Municipally-Owned Property: The G-overnmental-Proprietary Distinction, 11 Syracuse L. Rev. 27, 28, 29.)
It has generally been determined that streets and highways are held in a governmental capacity. (See City of Albany v. State of New York, 21 A D 2d 224, 225, affd. without opn. 15 N Y 2d 1024; Nehrbas v. Incorporated Vil. of Lloyd Harbor, supra, p. 194.) As stated in People v. Grant (306 N. Y. 258, 260, 262): “ Streets pertain to the exercise of a governmental function * * *. Political subdivisions and municipal corporations hold the fee of streets for the benefit of the public. This refers not alone to adjacent property owners, nor to the inhabitants of the particular political subdivision or municipality, but to the whole people. * * * [p. 262] it follows that residents of a particular area in a town or village do not possess and cannot be granted proprietary rights to the use of the highways therein in priority to or exclusive of use by the general public.”
When the Town Board of the Town of Peru was considering the relocation which resulted in the construction of subject road, a petition was presented on .September 23, 1927 to the town *54 board by residents of Valeonr Island. -Said petition stated in part: “ The undersigned * # * do hereby earnestly petition for the relocation of the present existing highway extending from the westerly shore of Lake Champlain easterly to the Lake Shore Road * * * in the Town of Peru. * * * We do earnestly urge upon the said Town Board that the relocation of said highway * * * will be a distinct advantage and benefit to the residents of Valcour Island, and to the public generally desiring access to Lake Champlain from the westerly shore thereof ”. We note that Valcour Island lies in both the Town of Peru and the Town of Plattsburg. In the resolution of November 10, 1927, wherein the town board decided to relocate said highway, it was stated: ‘'Whereas, by the re-location thereof it is possible for the Town of Peru to obtain title in fee to said strip of land and to provide for the travelling public a highway without cmy limitation or condition attached to the use thereof ”. (Emphasis added.) Certainly, when the town acquired this property it was with the intent to develop a highway which could be used by “ the whole people.” Just as certainly, the Town of Peru could not have sold or otherwise disposed of subject property which was in active use as a highway on the date of appropriation, as it could property held in a proprietary capacity. (See Highway Law, § 205.)
It is also our opinion that the dock constructed into Lake Champlain was held in a governmental capacity. Both parties agree that Lake Champlain is a navigable body of water; and, that title to the bed of the lake bordering the lands of New York presumptively rests in the State of New York. Although the parties did not present proof concerning the title to the bed of Lake 'Champlain, it seems obvious that at least a portion of this dock extends beyond the low-water mark and was built upon lands presumptively owned by the 'State of New York. Claimant’s proof did not rebut this presumption. When one realizes that the words “State of New York ” are but another way of referring to 11 the whole people ’ ’, one realizes the anomaly presented by claimant’s position that said dock, which was to some degree built upon State land, could only be used by residents of the Town of Peru. Furthermore, as stated in Knight v. Giarlone (200 N. Y. S. 2d 805, 806), the right of an upland owner to build docks into navigable waters, is ‘1 only an appurtenance or easement to the ownership of the uplands.” As we have stated, the uplands herein were owned in a governmental capacity. Certainly, the easement appurtenant thereto cannot be greater than the primary property right.
*55 As subject property was held in a governmental capacity, and, as the property appropriated was not put to a use substantially different from that use made of it prior to the appropriation, claimant is not legally entitled to receive compensation for said appropriated property.
The claim is dismissed.