OPINION OF THE COURT
Edward J. Amann, Jr., J.
This is a claim for the appropriation of the claimant’s property pursuant to sections 30 and 349-c of the Highway Law, which proceeding is described as Richmond Parkway, section 2 (Huguenot Avenue to Richmond Avenue) Richmond County, Map No. 11, Parcel No. 11. The aforesaid map and description was filed in the office of the County Clerk of Richmond County on June 20, 1973. The claim was filed with the Clerk of the Court of Claims on October 3, 1975 and served on the office of the Attorney-General on October 7, 1975 and has been neither assigned nor submitted to any other court or tribunal for audit or determination. The court adopts the description of the appropriated property as shown on the map and the description filed in the Richmond County Clerk’s Office, a copy of which is attached to the claim and the same is incorporated herein by reference.
The claim was consolidated with Claim No. 59661 for the purpose of taking proof of value.
The claimant submitted proof of ownership of the property by means of a deed from Spencer C. Young, Treasurer of the City of New York, grantor, to the City of New York, grantee, dated February 24, 1953 and recorded on February 25, 1953 in Liber 1228 of Deeds at page 214.
Prior to the appropriation, the subject parcel consisted of two contiguous tax lots, containing 107,598 square feet.[1] The property was irregularly shaped with a frontage of 975+ feet along the southerly side of Drumgoole Road East. The rear portion of the parcel was adjacent to the Staten Island Rapid Transit. At its widest point the parcel was 201+ feet in depth. The topography was level and slightly above grade. The property is vacant, being covered with trees and shrubs. All utilities are available with the exception of a sanitary sewer.
As a result of the appropriation, a strip one foot in width and 584.75 feet in length was taken. This strip fronted on the southerly side of Drumgoole Road East. The appropriation, which reserved the right of pedestrian access, across the *337 appropriated area, was for the purpose of restricting vehicular access. Vehicular access for ingress and egress was permitted, however, at the easterly and westerly portions of the property.[2]
The court has made the statutory view.
Both appraisers, in their written appraisal, found the highest and best use, both before and after the appropriation to be for the construction of single family dwellings.
After the trial had commenced, the attorney for the State alleged that since the subject parcel was being held as a park the damage resulting from the taking was minimal.[3] The claimant’s attorney argued that under section 3 of the General Municipal Law, the taking was compensable and that their appraisal was correct as submitted.
Since both parties have stipulated that the property was taken and being held for park purposes the issue is whether section 3 of the General Municipal Law is applicable. Section 3 provides: "Where property of a municipal corporation, school district or district corporation is taken in the exercise of the power of eminent domain for a purpose substantially different from that for which it is held by such municipal corporation, school district or district corporation just compensation to the municipal corporation, school district or district corporation shall be made in the same manner, to the same extent and subject to the same limitations as though it were private property.”
In the case presently before the court, the subject parcel was being held for park purposes; the appropriation was for highway purposes. It would therefore appear on its face that the statute applies and that the claimant, the City of New York, is entitled to compensation in the same manner as if it were a private party. However, in order for the above-quoted section to apply, the purpose for which the property is taken must not only be different, but "substantially different.”
The section does not define what is meant by substantially different and neither do most of the cases dealing with the section. In view of this fact the court has sought to ascertain *338 the definition by looking at the intent of the legislation. In signing the bill into law, then Governor Rockefeller said:
"At present, a city park open to the use of the general public is deemed held in a governmental capacity, and thus if acquired by the State for a highway, no compensation is payable to the city, even though the city may be required to build another park.
"The 'substantially different’ test proposed by this bill is a more equitable standard, since it would authorize compensation in those instances where a municipality loses the use of an activity which is not replaced by the unit of government acquiring such property.” (Governor’s Memorandum approving L 1960, ch 180, NY Legis Ann, 1960, p 471.)
It is therefore clear that the purpose of the legislation was to "rectify the obvious inequities created by the noncompensable appropriation of governmentally held municipal property for a substantiality different purpose.” (Town of Peru v State of New York, 59 Misc 2d 49, 52, revd on other grounds 35 AD2d 875, app dsmd 30 NY2d 859.) The test implicit in the legislation is therefore whether the municipality will lose the use of an "activity” and be required to replace it. When applying the test to the subject parcel, it becomes apparent that the property may still be used for the purpose for which it was being held, namely, for park purposes. The only difference between the before and after situation is that in the latter, vehicular access is restricted over a portion of the premises; in all othe respects the property remains the same. Vehicular access far greater than is needed for a park is still available at either end of the parcel and pedestrian access is unimpeded.
While it may be argued that a potential highest and best use is destroyed without compensation, the remedying of such was not the purpose of the legislation. The sole purpose was to compensate a municipality when its property was converted to another use thereby requiring the municipality to find a substitute. Were the court to find otherwise than it has, it would lead to the anomalous situation whereby the State would pay direct and severance damages for taking 500 feet and pay nothing if it took the entire parcel for park purposes.[4] Having so found, the court finds the claimant to have suffered *339 $500 in damages. This amount represents the direct damages found in the appraisal submitted by the State; the claimant’s appraiser found no direct damages.
Accordingly, the court awards the claimant $500 for all damages, with appropriate interest thereon from June 20, 1973 to December 20, 1973 and from October 3, 1975 to the date of entry of judgment herein.

. The amount of square footage was stipulated to by the attorneys.

. There were approximately 90+ feet of unobstructed access at the westerly end and 300+ feet of unobstructed access at the easterly end.

. Although the court is aware of the requirements of rule 25a of the Court of Claims (22 NYCRR 1200.27), the attorney for the claimant failed to object, except in his posttrial brief and is therefore deemed to have waived any objection.

. In addition, to pay the claimant and still permit it to keep the land for park purposes, would result in a windfall.