In the Matter of the Application of CENTRAL HUDSON GAS AND ELECTRIC CORPORATION, Petitioner, for an Order of Certiorari Directing H. MORGENTHAU, JR., and Others, Constituting the Water Power and Control Commission of the State of New York, Respondents, to Certify and Return All of the Proceedings of the Water Power and Control Commission in the Matter of the Application of the City of New York to the Water Power and Control Commission for the Approval of Its Plans for Securing a Water Supply from the Rondout Creek in the County of Ulster, State of New York.

THE CITY OF NEW YORK, Respondent.*

(Water Supply Application No. 611.)

Third Department, March 17, 1932.

* Affd., 259 N. Y. ——.

*A. T. Clearwater* [*R. L. von Bernuth* and *W. F. Reardon* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Charles E. McManus* of counsel], for Water Power and Control Commission of the State of New York.

*Arthur J. W. Hilly, Corporation Counsel* [*Frank T. Fitzgerald* of counsel], for the respondent, City of New York.

HINMAN, J. The rule is well settled in this State that a general grant of power to condemn property does not extend to property

already acquired for or devoted to a public use. Such property can only be condemned by special legislative authority and clearly expressed or necessarily implied. (*N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 200 N. Y. 113, 117; *Matter of City of New York* [*Newport Ave.*], 218 id. 274, 276; *Matter of City of New York* [*Saratoga Ave.*], 226 id. 128, 135.) The power to condemn must be exercised in strict conformity with the terms of the statute conferring the right. (*Matter of Water Commissioners of Amsterdam,* 96 N. Y. 351, 357; *Schneider* v. *City of Rochester,* 160 id. 165, 172; *County of Jefferson* v. *Horbiger,* 229 App. Div. 381, 383.)

There are two statutes applying to water supply for New York city which are to be construed as *in pari materia* (Greater New York Charter, *supra*), and the act creating the board of water supply of the city of New York (*supra*). (*Matter of City of New York* [*Town of Hempstead*], 125 App. Div. 219; affd. 192 N. Y. 569.) The latter statute did not repeal the charter provisions relating to the subject of water supply and so far as material here was practically a duplication of the charter provisions. From a reading of these two statutes it is clear that the city has been given specific authority to condemn property already acquired for or devoted to a public use. The question is whether the city has strictly complied with the requirements of those statutes, or has failed to do so in the respect urged by the petitioner.

Section 485 of the charter and section 25 of the New York City Water Supply Act are substantially the same. The latter defines the term " real estate " as therein used " to signify and embrace all uplands, lands under water, the waters of any lake, pond or stream, all water rights or privileges * * *. It shall also be construed to include all real estate (as the term is above defined) heretofore or hereafter required or used *for railroad, highway or other public purposes,* providing the persons or corporations owning said real estate or claiming interest therein, shall be allowed the perpetual use for such purposes of the same *or of such other real estate to be acquired for the purposes of this act as will afford practicable route or location for such railroad, highway or other public purpose,* and in the case of a railroad, commensurate with and adapted to its needs; and provided also that such persons or corporations shall not directly or indirectly be subject to expense, loss or damage by reason of changing such route or location, but that such expense, loss or damage shall be borne by the city of New York. In case any real estate so acquired, or used for public purposes, is sought to be taken or affected for the purposes of this act *there shall be designated upon the maps referred to in the previous sections thereof, and there shall be described in the petition, hereinbefore referred to, such portion*

*of the other real estate shown on said maps and described in said petition, as it is proposed to substitute. in place of the real estate then used for such railroad, highway or other public purposes."* Section 485 of the charter is worded substantially in the same language.

Concededly the application, maps and plans of the city provide neither for the perpetual use of said water rights by the petitioner, nor for the acquisition by the city of other real estate to be substituted by the city at its own expense for the real estate (water rights) proposed to be taken from petitioner. The Water Power and Control Commission has ruled that the city is not required to make such substitution.

Section 13 of the New York Water Supply Act (as amd. by Laws of 1928, chap. 525) provides: " Where loss, damage or expense, direct or consequential, has resulted to any duly incorporated railroad corporation, operating a steam railroad in any county in which land shall be acquired in pursuance of the provisions of this act, or by reason of any of the matters in this act involved, *or any electric corporation, or the owner of any water power on any of the streams or waters affected by the provisions of this act,* the board of estimate and apportionment of the city of New York, is hereby authorized and empowered to agree with such railroad corporation, *or any such electric corporation, or the owner of any such water power,* upon the compensation which shall be made to it for such loss, damage or expense, and, when so directed by the board of estimate and apportionment, the comptroller of said city shall issue corporate stock of the city of New York in payment thereof. In the event of no agreement being reached between said board and such railroad corporation, *or any such electric corporation, or the owner of any such water power,* the commissioners of appraisal appointed to estimate damages for lands acquired in such county is hereby authorized and directed to pass upon such claim and to make awards therefor as provided in this act." The portions italicized were added by chapter 525 of the Laws of 1928. This 1928 amendment to section 13 extended the benefits of that section to " any electric corporation, or the owner of any water power " which had been enjoyed by the railroads since the passage of the New York Water Supply Act in 1905. It is not thought that these provisions of section 13 are in any manner inconsistent with section 25 providing for the substitution of other real estate. Railroad corporations were intended to have the benefits of both sections. The question is whether electric corporations were intended to have the benefit of the substitution of other real estate under section 25.

It is only by implication, if at all, that this electric corporation serving as a public utility can be brought within the general language

of section 25. No real estate of the petitioner is to be taken except as its water rights are to be partially destroyed by the taking of the water. Clearly the Legislature has not intended that the city shall substitute other water for the water to be taken, nor water rights for water rights proposed to be taken. The claim of the petitioner is that it is the duty of the city to substitute a steam plant at another location for the generation of electricity. Does section 25 contemplate such a substitution of a different physical property for the thing taken? The language of the section is: " providing the persons or corporations owning said real estate or claiming interest therein, shall be allowed the perpetual use * * * of such other real estate to be acquired for the purposes of this act as will afford practicable route or location for such railroad, highway or other public purpose, and in the case of a railroad, commensurate with and adapted to its needs." The statute seems to contemplate the erection of the same thing at another location, something identical, not something equivalent. It seems to mean something susceptible of relocation, not a different thing which might serve the same need in a different way. Other real estate must be acquired which will afford practicable " route or location," a new route or location, as might readily be the case with a railroad right of way or a highway. With this electric corporation it is not its plant that is to be relocated. It will be a less valuable plant, but will remain and continue to run with less water. It is not a relocation of plant that is involved, but the supplying at the same or a different place of different machinery to overcome a partial loss of income by the use of coal in a steam plant. If the present plant happened to be located at some point accessible to railroad facilities for the shipment of coal, it would involve no change of location whatsoever. The Legislature has recently amended section 13 so as to authorize agreement between the city and electric corporations, but no amendment has been made to section 25. If an electric corporation is entitled to the benefits of substitution of other property, as provided in section 25, it must be because the words " other public purposes " appear in the expression " railroad, highway or other public purposes." So far as we know it has never before been claimed that section 25 was intended to refer to a substitution of a steam plant for water rights appropriated by the city. The language of the section does not seem to adapt itself readily to such a substitution and under the rule of *ejusdem generis* the words " other public purposes " should be confined to real estate taken for which a substitute in kind may be provided, something which may be rerouted or relocated, such as a railroad, a highway, a power transmission line

or a telephone line. There is nothing in the statute which seems to require the substitution of something else for water rights. It is reasonable to suppose that the Legislature in providing for relocation of railroad or highway property in order that there might be uninterrupted service to the public, had in mind the benefit of not only the owner of the real estate taken but the inhabitants of the area affected thereby. The same reason would apply to any public utility whose property is devoted to a public use, but the Legislature has failed to use language susceptible of application to the situation which here exists where the property taken cannot be supplied elsewhere by mere relocation, but if accomplished at all the substitution must take another form. The city can no more satisfy the terms of the present statute by substituting steam plant machinery for lost water rights than it could substitute buses and trucks to fill the gap occasioned by the city's destruction of a section of a railroad. By agreement under section 13 of the Water Supply Act either may be done. In the absence of agreement the city must pay all damages, direct and consequential, but if substitution is to be required at the city's expense to prevent the interruption of public service in the manner suggested by the petitioner, authority for it must be found in the statute. We do not find it therein expressed. The remedy is with the Legislature.

We find no merit in the contention of the city of New York that the objection urged by the petitioner should be taken at the hearings before the board of estimate and apportionment and not before the Water Power and Control Commission. Prior to the creation of the Water Power and Control Commission in 1911 the duty of passing upon the plans before applying to the Supreme Court for the appointment of commissioners of appraisal devolved solely upon the board of estimate and apportionment. Since the creation of the State Commission such duty has been imposed upon both the board of estimate and apportionment and the Water Power and Control Commission (Greater New York Charter, § 472; Conservation Law, § 523). Under the latter section the Water Power and Control Commission is charged with determining whether the plans presented to it " are just and equitable to the other municipalities and civil divisions of the State affected thereby and to the inhabitants thereof." And the Commission may reject the plans. The language is broad enough to charge the Commission with the duty of seeing that the provisions of section 25 with reference to proper provisions in the plans for substitution of real estate have been complied with. As an incident to that duty the Water Power and Control Commission was charged with the responsibility of interpreting the provisions of section 25 with

respect thereto. (*Matter of City of Long Beach* v. *Public Service Commission*, 249 N. Y. 480.) Moreover, the Commission has assumed that duty and has determined that the city need not make any provision for replacement. The city has elected to present its plans first to the Water Power and Control Commission rather than to the board of estimate and apportionment. It is appropriate that the petitioner should take the objection at this time rather than to await the hearings before the board of estimate and apportionment, thus subjecting itself to the claim of waiver or the possible future necessity of rehearing of this very question before the Water Power and Control Commission.

The determination of the Water Power and Control Commission should be confirmed, without costs.

All concur.

Determination confirmed, without costs.