Van Voorhis, J.
The Town Board of Cheektowaga appeals from the affirmance of an injunction restraining the discharge of storm water from the town into the City of Buffalo. Plaintiff public authority maintains and operates the sewers in the City of Buffalo. Drainage District No. 1 of the Town of Cheektowaga is adjacent to that city. In its undeveloped state the surface waters from this area of the town drained into the city. About 1927 a storm sewer was constructed in District No. 1 which emptied into a ditch which flowed into the city. In 1932, in connection with the paving of Eggert Road which is the boundary between the town and the city, a culvert was constructed through which these surface waters drained into the city. Sewers in that area of the city were not directly connected with the culvert. In 1939, a conduit was constructed in the city at the city’s end of the culvert. In 1958, the town undertook to pave a street known as Tudor Place and to construct receiving basins and a .storm drainage system in connection therewith, despite warnings by plaintiff that connection with plaintiff’s system would create a nuisance. The city’s system, in this area, *50 combined sanitary and storm water sewage. Without plaintiff’s permission the town connected the Tudor Place drainage system to plaintiff’s system, which resulted in the discharge of sewage into streets of the city and the backing up of sewage into homes.
The trial court held that the town is an upper landowner and that plaintiff is a lower proprietor with respect to the flow of surface waters, and that the law applicable to such owners applies to these parties; that either proprietor can improve his land without being liable for a change in flow of the surface waters, provided he does not resort to drains, pipes or ditches (Kossoff v. Rathgeb-Walsh, 3 N Y 2d 583); that the town, in constructing receiving basins and a storm drain system in Tudor Place, collected surface waters, diverted their natural flow through pipes and concentrated the flow into plaintiff’s system in such an artificial manner as to invade the rights of the plaintiff.
The Appellate Division affirmed without opinion.
Here the city 'Sewer Authority and the Town of Cheektowaga proceeded separately with their provisions for the disposal of surface water (in the town) and combined sanitary and storm water sewage (in the city) until trouble arose due — it has been found — to overtaxing the city’s drainage conduit by the concentration by the town of its surface water in pipes and drains which during freshets proved to be too much for the city Sewer Authority’s conduit to discharge. Consequently both kinds of sewage backed up into the houses serviced directly by the city’s system. This, under the decided cases, rendered the town guilty of a wrongful act which is enjoined by the judgment from which this appeal is taken.
The argument for the town consists largely of an assertion that this was a natural water course which the city’s Sewer Authority had no right to limit by enclosing the stream in too small a conduit to contain its full flowage. The edge of this argument is dulled considerably by the undisputed fact that the town, with its newly created Tudor Place system, immensely increased the flow of the .surface waters and by the further fact that there is no evidence whatever that plaintiff’s facility could not have handled adequately the former flow.
Although these factors are of surpassing significance — and decisive of this case — we digress for a moment to remark the *51 distinction developed in the law between rules applicable to the general drainage of surface waters and to the use of natural waterways for their discharge. The town assumes that the open ditch, which is our concern in this case, is analogous to a. brook, creek or stream with which plaintiff would have no right to tamper.
There is little authority for such an assumption. A drainage ditch does not have the attributes of a natural watercourse (Barkley v. Wilcox, 86 N. Y. 140, 144; Town of Hamburg v. Gervasi, 269 App. Div. 393, 394; cf. Lumley v. Village of Hamburg, 181 App. Div. 441, 444). If not, plaintiff had the right to destroy it in the development and use of its own lands, even if such conduct would cause the surface waters to back up in the town’s area (Bennett v. Cupina, 253 N. Y. 436). On the other hand, if the ditch be considered a waterway plaintiff would have the right to fill it in so long as it did not recast the waters on the town’s lands but merely created a stagnant pool on its own (County of Nassau v. Cherry Val. Estates, 281 App. Div. 692).
In a recent case (Kossoff v. Rathgeb-Walsh, 3 N Y 2d 583, supra) we reviewed the principles pertinent to the disposal of surface waters, stating (pp. 589-590): “Both [owners of the upper and lower estates] have equal rights to improve their properties, come what may to the surface water, provided, of course, that the improvements are made in good faith to fit the property to some rational use to which it is adapted, and that the water is not drained into the other property by means of pipes or ditches. Where, as here, it is diffused surface water, neither party is prevented from improving his parcel of land regardless of what becomes of the surface water.”
This distinction between deliberately diverting storm waters so that they invade another’s land and preventing their flow upon one’s own acreage has long been drawn (e. g., Barkley v. Wilson, 86 N. Y. 140, 145, 147-148, supra; Town of Hamburg v. Gervasi, 269 App. Div. 393, 394, supra). In sum, it is permissible —'in the cultivation and improvement of premises — to obstruct and prevent the running off of surface waters even if, in so doing, there is injury to the estate of an upper proprietor. But should these waters be carried off by a natural outlet, such as a stream, the lower owner may not dam the channel or direct *52 the waters hack since the upper owner possesses the lawful right to have the waterway pass through his lands without hindrance (Kleinberg v. Ratett, 252 N. Y. 236, 239; Conhocton Stone Road Co. v. Buffalo, N. Y. & Erie R. R. Co., 3 Hun 523, 528; Brown v. Neely, 197 Misc. 173, 176-177, affd. 277 App. Div. 1126).
For present purposes it does not matter whether the open ditch which once carried off the waters be considered a natural watercourse. Presuming arguendo that it be such, it is ancient and still authoritative law that the right of the owner of the upper heritage to have the waters carried off is subject to the qualification that he cannot, by artificially created means, concentrate and discharge into the stream waters in quantities beyond its natural capacity or which would, if left alone, have drained elsewhere (Byrnes v. City of Cohoes, 67 N. Y. 204, 207; Lynch v. Mayor of City of N. Y., 76 N. Y. 60, 62; Noonan v. City of Albany, 79 N. Y. 470, 477; McCormick v. Horan, 81 N. Y. 86, 89; Prime v. City of Yonkers, 192 N. Y. 105, 110; Fox v. City of New Rochelle, 240 N. Y. 109, 112).
The position of the town is inappropriate to the facts. The situation is not that of an upper owner being deprived of the use of a natural watercourse; rather, it is that of a proprietor artificially collecting and concentrating large quantities of surface waters and discharging them into an outlet on another’s land unable to carry them off.
Relief has been granted to plaintiff in the form of a mandatory injunction requiring defendant to disconnect its storm water outfall sewer in this area. Such relief is proper, in our judgment, but subject to reasonable conditions. Obviously the storm water sewage from this part of the Town of Oheektowaga cannot be left to flow through the streets. This condition has resulted from the large increases which have been occurring in suburban populations, and the real estate developments which are thereby made necessary. The town through an improvement district has general power of condemnation (Town Law, § 215, subd. 5), but the contours of the land appear to require that surface water drainage from this part of Oheektowaga shall go through portions of the City of Buffalo. If the town is to be obliged to establish its own storm water sewage outfalls, it apparently would be necessary to install them in Buffalo city streets. A difficulty may be presented by the rule that a general grant of *53 power to condemn property does not extend to property already acquired for or devoted to a public use (Matter of Central Hudson Gas & Elec. Corp. v. Morgenthau, 234 App. Div. 530, 532-533, affd. 259 N. Y. 569). The general rule is that property already devoted to public use can only be condemned by special legislative authority clearly expressed or necessarily implied (New York Cent. & H. R. R. R. Co. v. City of Buffalo, 200 N. Y. 113, 117). We do not now decide to what extent this rule may apply to this situation. Negotiations have taken place between the city Sewer Authority and the town on this subject, but they are obviously far from reaching agreement. The town insists that its storm water could be handled through the city’s main simply by the construction of an additional drain from Eggert Road to Kay Street in Hastings Avenue at a total cost of between $7,000 to $12,000. The city Sewer Authority, upon the other hand, asserts that the town ought to pay $841,700 toward the reconstruction of the city mains to provide not only for present needs but also for the anticipated increased need over several decades.
Special Term’s injunction contained a proviso: “That the provisions of paragraph two [the mandatory injunction] are suspended for ninety days from the entry of this judgment but shall then become effective without further proceedings unless this Court shall otherwise order during the interim”.
The city is evidently contemplating rebuilding its sewage disposal facilities in this location, as well it might since sanitary and storm water sewage are intermingled, and it would be appropriate that the town collaborate to whatever extent is necessary in order to facilitate the disposal of its sewage from this watershed. Although a court cannot resolve all of the complex problems arising from the existence of separate municipal corporations or political subdivisions where natural forces are such as to require them to collaborate, relief by mandatory injunction, which depends upon invoking the equitable powers of the court, can be granted or withheld on reasonable and equitable conditions. As the matter stands, the town is left at the mercy of the city. The order appealed from should be modified by directing that a mandatory injunction issue upon the making of a fair offer by plaintiff or the City of Buffalo to defendant providing for joint action by plaintiff or the city *54 with defendant with respect to the disposal of the storm water from this portion of the town. The matter is, accordingly, remitted to Special Term with power to rule upon whether the proposal or proposals submitted or to be submitted by plaintiff or the City of Buffalo at such time or times as Special Term may require to the town for the sharing of the expense and the conduct of this enterprise is or are fair and reasonable, and to determine the time when the injunction shall take effect, retaining jurisdiction in the premises until such a plan shall go into operation, with directions to issue the injunction at any time meanwhile if the town refuses to co-operate in any stages of such a plan submitted by the city within such time as Special Term shall direct.
As so modified, the order appealed from should be affirmed, without costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Keating and Breitel concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.