ATLANTIC STATES LEGAL
FOUNDATION, et.al,
Plaintiffs,

v.

THE ONONDAGA COUNTY DEPART-
MENT OF DRAINAGE AND SAN-
ITATION, et.al, Defendants.

The Onondaga County Department of
Water Environment Protection, et
al, Third–Party Plaintiffs,

v.

2.3± Acres of Land in the City
of Syracuse, et.al, Third–
Party Defendants.

No. 88–CV–0066.

United States District Court,
N.D. New York.

Dec. 7, 2001.

Richard J. Lippes, Allen, Lippes Law Firm, Buffalo, NY, Sean P. Lynch, Atlantic States Legal Foundation, Syracuse, NY, Carl G. Dworkin, Office of Carl G. Dworkin, Albany, NY, for Atlantic States Legal Foundation, Inc.

Norman Spiegel, Office of Atty. Gen., New York City, for State of new york, Thomas C. Jorling.

Christina M. Pezzulo, Onondaga County Attorney's Office, Syracuse, NY, Jon A. Gerber, Office of Jon A. Gerber, Syracuse, NY, for Onondaga County Dept. of Drainage and Sanitation.

Luis A. Mendez, Christina M. Pezzulo, Onondaga County Attorney's Office, Syracuse, NY, Jon A. Gerber, Office of Jon A. Gerber, Syracuse, NY, for Onondaga County.

Nancy L. Pontius, David M. Garber, MacKenzie, Hughes Law Firm, Syracuse, NY, Terri Bright, City of Syracuse Corp. Counsel, Syracuse, NY, Jeffrey T. Lacey, MacKenzie, Hughes Law Firm, Syracuse, NY, for City of Syracuse, Syracuse Urban Renewal Agency.

David M. Garber, MacKenzie, Hughes Law Firm, Syracuse, NY, for 2.3 Acres of Land in City of Syracuse.

## DECISION & ORDER

McAVOY, District Judge.

## I. Introduction

The City of Syracuse and the Syracuse Urban Renewal Agency ("City") filed a motion for summary judgment contending that the County of Onondaga ("County") cannot, as a matter of law, condemn property within the City for a sewage treatment plant. The County then filed a cross-motion seeking summary judgement on the basis that condemnation of the subject property is appropriate here as a matter of law. For the reasons that follow, the County's motion is granted in part and denied in part, and the City's motion is granted in part and denied in part.

## II. Background

This action is a result of Atlantic States Legal Foundation's suit against the County seeking to force it to comply with the Federal Clean Water Act and remedy a sewage problem that has polluted Onondaga Lake ("the Lake"). *See* Amended Consent Judgement. Atlantic States alleged that the County sewer system was overflowing when the area in and around the City of Syracuse received unusually high levels of rainfall, causing raw sewage to drain into the Lake.

The negotiations from that suit resulted in an Amended Consent Judgment ("ACJ") that required the County to construct a sewer treatment plan in order to halt pollution of Onondaga Lake. The ACJ was approved by this Court. *See* Amended Consent Judgement. Phase II of the project required the County to construct a new sewage treatment plant in order to better control the flow of sewage during wet weather. The plant was to be located in the Midland Avenue neighborhood, specifically at Oxford Street and Onondaga Creek. County Memorandum I, page 5. The County cannot obtain the land it needs to build the Midland treatment center, however, because the City of Syracuse and the Syracuse Urban Renewal Agency ("SURA")[1] own the property and now oppose the County condemning the property for use as a sewage treatment plant.[2]

Following extensive negotiations that failed to produce a solution, the County moved to join the City and SURA as third party defendants. This Court granted the County's motion and joined the City and

1. Throughout this decision, the Court has referred to both SURA and the City of Syracuse as "the City" or at times as "the City and SURA."

2. For various reasons, the City is not a party to the ACJ. At one point, the City was cooperating with the County in creating a plan to comply with the ACJ, and it appeared to the interested parties that the City would voluntarily sell the property to the County. That is no longer the case. In fact, the City Common Council has voted against the transfer of the property to the County.

SURA as a third-party defendants for purposes of adjudicating the condemnation action and other relief requested in the third party complaint. *See Atlantic States v. Onondaga County et al.*, 88–CV–66, Dkt. No. 279. At that time, the Court determined that adjudication of the condemnation action in this Court was appropriate pursuant to the All Writs Act. *See id.* (citing *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988)). Joinder was without prejudice to the City's right to raise all defenses to condemnation that it might have. *Id.*

Presently before the Court is the City's motion for summary judgment on the third-party complaint. The City primarily contends that the County has no authority to proceed with eminent domain proceedings because: (1) the County Legislature must authorize condemnation of the City property and has not done so here; (2) the Common Council of the City of Syracuse must adopt an ordinance consenting to the condemnation which was not done here; (3) the prior public use doctrine bars the County from condemning the property; and (4) the County failed to comply with Article 5–A of the County Law. The County cross-moved for summary judgement contending that: (1) the County is empowered to condemn City property; (2) that the County has satisfied all requirements of the Eminent Domain Procedure Law (EDPL); or alternatively (3) that the County is entitled to have this Court order condemnation under the All Writs Act without regard to state law.

## III. Discussion

### A. Standard for Summary Judgement

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Because there are cross-motions for Summary Judgment here, the Court construes the facts in favor of the non-moving party when deciding each motion.

### B. Condemnation

The City makes two arguments that relate to the ability of the County to condemn the property at issue. The City first claims that the County has not complied

with § 153(1) of the New York County Law because the County Board of Supervisors failed to pass legislation authorizing the condemnation. In the alternative, the City argues that condemnation is inappropriate because the Onondaga County Administrative Code (OCAC) § 11.53(f) prohibits condemnation of City land without approval of the Syracuse Common Council. The Court will address each of these arguments in turn.[3]

### i. County Legislative Authorization

■ Under § 153(1) of the New York County Law, the County can only exercise its power to condemn by "a local law or resolution duly adopted by the board." The City contends that the County has failed to pass an adequate local law or resolution and consequently cannot condemn. The County, however, points to Resolution No. 268–01, made on October 1, 2001, giving the County authorization to comply with the ACJ. That resolution states in part that the County was "[a]uthorizing the acquisition of property to enable the County of Onondaga to comply with the requirements set forth in the Onondaga Lake Amended Consent Judgment..." The resolution further authorizes the County Executive to "enter into any and all agreements to implement the intent of this resolution." Garber Affidavit ex. 7. The County also points to the amendment to the Resolution made on June 3, 2002 which states that "...this legislature hereby authorizes condemnation...to acquire all of the properties

identified in Resolution 268–01..." These resolutions were both duly adopted by the County Legislature. *See* Resolution No. 130 Reply Memorandum of Law of City of Syracuse Tab No. 2.[4]

Even viewing the facts in the light most favorable to the City, it is evident to the Court from these Resolutions that the County Board resolved to acquire the property through any means necessary, including condemnation. The initial resolution authorized the "acquisition" of property, emphasizing an agreement but at the same time requiring compliance with the ACJ. Further, the June 3, 2002 amendment to Resolution 268–01 expressly authorized condemnation of the subject property. Consequently, summary judgment is denied to the City on this basis.

### ii. County Law 11.53(f)—Syracuse Common Council Approval

■ The City next argues that the County, pursuant to Onondaga County Administrative Code § 11.53(f), must first gain approval from the Syracuse Common Counsel before any condemnation can proceed. Section 11.53(f) of the OCAC states in relevant part:

"The commissioner shall have power:....(f) To acquire,... in the name of the county, by condemnation, real property..., including but not limited to such property of a municipal corporation. Provided...no such real property or rights or easements therein of the City of Syracuse may be acquired by

---

**3.** The County contends that it is entitled to Summary Judgment because a variety of resolutions authorize the condemnation including resolutions 189–97, 30–99 and 268–01; that section 11.82 of the Onondaga County Administrative Code clearly does not require Syracuse Common Council approval of a County condemnation action but only restricts the actions of the Commissioner of Public Works. The Court will address these arguments in their appropriate place.

**4.** The City's argument that the second resolution should not be considered by this Court because it was passed after the implementation of this lawsuit is unavailing. The resolution is entitled an amended resolution and simply operates to do just as the City requested, namely, clarify the intent of the County with regard to whether condemnation was authorized by the phrase "acquire the lands necessary."

condemnation without the consent and approval of the common council of the city by ordinance duly adopted."

Onondaga County Administrative Code § 11.53(f), Garber Affidavit ex. 12.

Under § 2 of the New York County Law, to the extent the provisions of the New York County law are in conflict with locally adopted county laws, the New York County Law is inapplicable absent contrary legislative intent expressed in the New York County Law.[5] Further, a county must abide by a local law requiring the county to gain approval of the municipal corporation prior to condemning property in that municipality. *Haas v. Nickerson,* 27 A.D.2d 842, 278 N.Y.S.2d 255, 256 (2d Dep't 1967) *aff'd* 21 N.Y.2d 902, 289 N.Y.S.2d 622, 236 N.E.2d 855 (1968). The local law in *Haas* specifically forbid the county from condemning land within the city limits without the city's approval. *See Haas,* 289 N.Y.S.2d at 622, 236 N.E.2d 855. The County argues that *Haas* is distinguishable here because the Onondaga County Administrative Code specifically states that the *"commissioner* shall have power" to condemn the property only with the approval of the Syracuse Common Council. Onondaga County Administrative Code 11.53(f)(emphasis added). "Commissioner" is defined within the code

as "the commissioner of drainage and sanitation." Onondaga County Administrative Code § 11.51(c). By contrast, "county" is defined in the same definitions section as the "County of Onondaga." Onondaga County Administrative Code § 11.51(d). Consequently, the County contends that when the Commissioner seeks to condemn property, he must have Syracuse Common Council approval, however, when the County legislature authorizes the condemnation, no approval is needed.

The City argues that this construction is "plainly wrong" because as an administrative unit of the County, the Commissioner may only condemn property with the approval of the County Legislature. Memorandum of City in Opposition to County Motion, at page 9 (citing *Tom Sawyer Motor Inns, Inc. v. Chemung County Sewer Dist. No. 1,* 33 A.D.2d 720, 305 N.Y.S.2d 408, 410–411 (3d Dept.1969)).

The County, however, points to New York County Law § 263, which confers on the administrative head of a county's sewer district the distinct power to "acquire by...condemnation, real estate and easements, rights of way or other interests therein necessary or proper for the purposes of the district."[6] That section does not require the administrative head to first gain approval of the county legislature.[7]

---

**5.** New York County Law section 2(b) states:
The provisions of this chapter in so far as they are in conflict with or in limitation of a provision of any alternative form of county government heretofore or hereafter adopted by a county pursuant to section two of article nine of the constitution, or any administrative code, county government law or civil divisions act enacted by the legislature and applicable to such county as now in force or hereafter amended, or in conflict with any local law heretofore or hereafter adopted by a county under an optional or alternative form of county government, shall not be applicable to the county, unless a *contrary intent is expressly stated in this* chapter.

**6.** Though *Tom Sawyer* designates sewer districts as merely administrative units of county governments, that case restricted the plaintiffs from suing the sewer district as a separate entity from the county, reasoning that all of its actions were ultimately answerable by the county. *Tom Sawyer Motor Inns,* 305 N.Y.S.2d at 411–412.

**7.** It is notable that for certain activities permitted under the statute, approval of the legislative body (be that county or city) is required. That is not the case for general condemnation of property.

Thus, the County contends its construction is more reasonable.

The Court starts with the general proposition that statutory construction is an issue of law for the Court. In determining the meaning of the statute at issue, the Court gives words their ordinary, plain meaning. *See Freier v. Westinghouse Electric Corp.*, 303 F.3d 176, 197 (2d Cir. 2002); *In re Caldor Corporation v. Ozer Group, L.L.C.*, 303 F.3d 161, 167 (2d Cir. 2002). Further, the Court construes the statute at issue in the context of the material around it. *See Freier*, 303 F.3d at 197 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). In doing so, the Court should attempt to give every term meaning and to construe provisions of a statute consistently. *See Freier*, 303 F.3d at 197 (citing *United States v. LaPorta*, 46 F.3d 152, 156 (2d Cir.1994)).

The Court finds that the interpretations suggested by the City would render the separate definitions given for "Commissioner" and "County" in § 11.51 of the Onondaga County Administrative Code meaningless.

The Court also notes that requiring Common Council approval for the condemnation here would conflict with OCAC § 11.82(g) and (i). Section 11.82 authorized the establishment of the Onondaga County Sanitary District.[8] The provisions of that section state in relevant part:

> After the establishment of the Onondaga County Sanitary District, the county legislature may authorize an increase, improvement or reconstruction of the facilities of such district, including the ac-

quisition of additional lands or interests in land therefor in the manner provided in section 11.54 of this article . . .

.    .    .    .    .

To the extent *not inconsistent with this section,* all of the provisions of this article relating to a sanitary district established pursuant to section 11.54 of this article shall apply to the Onondaga County Sanitary District.

OCAC § 11.82.(g)(i). The County argues, and the Court agrees, that the requirement for Common Council approval contained in section 11.53 of the OCAC would be inconsistent with section 11.82(g) of the OCAC if it were read to apply to the County legislature.[9] Section 11.82(g) of the OCAC grants specific statutory authority to the County to manage the sewer district and acquire all necessary lands to do so. Consequently, the only consistent reading of the statutes, and therefore, the one this Court must adopt, does not require approval of the Common Council for actions taken by the County to fulfill its obligations under § 11.82 of the OCAC.

Further, the Court finds that this construction is reasonable in light of the New York State County Law allowing condemnation by the administrative head of a sewer district. *See* N.Y. Co. L. § 263. The OCAC restricts the right of the Commissioner, as an employee of an administrative unit of the County, from acting independently to condemn property within the City of Syracuse without the authorization of the City Common Council in derogation of New York State County Law. Taking Article 11–A of the OCAC as a

---

**8.** The Onondaga Sanitary District is the predecessor to the County organization that is suing as third-party plaintiff here.

**9.** It is not disputed that section 11.82 was passed after 11.53, and thus, the 11.82(i) exception would apply to 11.53. Further, prior

to the passage of 11.82, the City was largely responsible for its own sewer services. It appears to the Court that 11.82 was passed in response to federal restriction on grants for water clean-up projects such as that at issue here.

whole, the Court concludes that the County does not need Syracuse Common Council approval for condemnation here.

### iii. Public Use Doctrine

■ Having found the County possesses general condemnation powers pursuant to § 74 of the N.Y. General Municipal Law, § 263 of the N.Y. County Law and § 11.82 of the Onondaga County Administrative Code, and that such powers are not limited by § 11.53 of the OCAC, the Court must consider the City's third argument, that the "Prior Public Use Doctrine" bars condemnation.

The County's general condemnation powers are subject to the common law "Prior Public Use Doctrine." In general terms, this doctrine holds that,

[a] general grant of power to condemn property does not extend to property already acquired for or devoted to a public use (*Matter of Central· Hudson Gas & Elec. Corp. v. Morgenthau*, 234 A.D. 530, 532–533, 256 N.Y.S. 97, *aff'd*. 259 N.Y. 569, 182 N.E. 184). The general rule is that property already devoted to public use can only be condemned by special legislative authority clearly expressed or necessarily implied (*New York Cent. & H.R.R.R. Co. v. City of Buffalo*, 200 N.Y. 113, 117, 93 N.E. 520).

*Buffalo Sewer Authority v. Cheektowaga*, 20 N.Y.S.2d 47, 52–53, 281 N.Y.S.2d 326, 228 N.E.2d 386 (1967).

The City contends that the properties in question are already dedicated to public uses. The City points to a low-income housing apartment building on the property, a public park in the area and the public basketball courts on the property as prior public uses. The County acknowledges that the prior public use doctrine is generally applicable to its condemnation actions, but argues that the action here falls into one of the narrow exceptions to the doctrine because either the public use has

been abandoned or there is a greater public need here.

Where a public ·use has been abandoned, condemnation will not be barred by that prior public use. *See In the Matter of Town of Riga v. County of Monroe*, 166 A.D.2d 39, 569 N.Y.S.2d 549, 550–51 (4th Dep't 1991.). Here, the County argues that the City has barred the street with a gate, that the housing unit is boarded up and abandoned, and that the property is essentially a vacant lot. The City contests this version of what occurs on the property. Given the significant disputes over whether the property has been abandoned, summary judgment is inappropriate here.

Taking all of the facts in the light most favorable to the City, however, the Court still finds that even if the property has not been abandoned, there is a greater public need here. *See Town of Riga*, 166 A.D.2d 39, 569 N.Y.S.2d 549, 550–51. In order to fall under this exception, the circumstances of the condemnation must be "special, unusual and peculiar" and the legislature must show an express or implied intention that land should be taken. *Matter of City of Rochester v. Rochester Gas & Elec. Corp.*, 54 Misc.2d 855, 283 N.Y.S.2d 631, 632 (N.Y.Sup.1967)(citing *New York Cent. & Hudson Riv. R.R. Co. v. City of Buffalo*, 200 N.Y. 113, 117, 118, 93 N.E. 520 (1910)).

In *Town of Riga*, the Court held that the County's condemnation of a section of road owned by the Town needed to build a landfill was a "special, unusual, and peculiar" circumstance because it was needed to accommodate larger quantities of solid waste and the general solid waste crisis. *Town of Riga*, 166 A.D.2d 39, 569 N.Y.S.2d 549, 550–51. Similarly, the *Rochester Gas and Electric* Court reasoned that condemning slum housing was a "special, unusual, and peculiar" circumstance as well because of the continuing crisis of urban

decay that was plaguing Rochester. *Rochester Gas and Electric*, 54 Misc.2d 855, 283 N.Y.S.2d 631, 632.

In the present matter the risk of further sewage discharging into the Lake creates a "special, unusual, and peculiar" circumstance. The new sewage treatment facility is crucial to secure the sanitary functioning of the sewer system within the City of Syracuse as found by the ACJ. Further, the change in position of the City from one of support for the program to one of disagreement after the plans for the program had been completed also weighs in favor of finding a special or unusual circumstance here. Significant sums of money and a significant amount of time has been spent in creating the plans for this sewage treatment plant. To force the County and State of New York to start over at this late date would work a significant hardship on them and the taxpayers who must foot the bill for such expenditures. The City's change of heart at this late date, after all plans and studies have been completed creates the unusual circumstance that plans that were once virtually certain to be completed might now be frustrated despite the money and time invested in them. Consequently, the Court finds that the circumstances surrounding this condemnation are sufficiently "special, unusual, and peculiar" to warrant overcoming any prior public use.

The next issue is whether implied or express legislative authority exists for the condemnation. In *Town of Riga*, direct legislative authority was found from the New York laws authorizing counties to act as the exclusive planning units for solid waste. Further, direct legislative authority has been found where federal laws have been passed indicating that certain issues are of "national concern." *See Rochester Gas and Electric*, 54 Misc.2d 855, 283 N.Y.S.2d 631, 632 ("the Congress of the United States regards the debilitating effect of slums as a matter of national concern.").

The direct or implied legislative authority for this condemnation can be found in Congress's indication that the general water pollution control issue is of great concern, as evidenced by the passage of the Water Pollution Control Act. Further, as in *Town of Riga*, the County here is charged with the duty to maintain the sewage treatment for the county, as set out in Article 5–A of the New York County Law. Finally, at the County level, the resolutions passed indicating the desire of the County to comply with the ACJ and the provisions of the OCAC authorizing the County to condemn land for use in the sewer district provide sufficient legislative intent to allow condemnation of the land here. Therefore, the City's motion for summary judgment on the basis of the prior public use doctrine is denied.

### iii. County's motion for Declaratory Judgment

■ The County has also requested that this Court issue a declaratory judgment that it has the authority to condemn the City property at issue. The Court has already dealt with the major hurdles to condemnation of the City's property above. Further, section 74 of the New York General Municipal Law states that a "municipal corporation" which has the power to "take and hold real property for the uses . . . of the corporation, may, . . . acquire title to such property by condemnation." The County of Onondaga is a municipal corporation as defined in § 2 of the New York General Municipal Law. Further, New York County Law § 263 authorizes the County Board of Supervisors to acquire "by purchase or condemnation" real property for lawful county purposes. Consequently, under New York state law, the County has the power to condemn the land

needed to construct the sewage treatment plant. The Court can find no other obstacle to the County's authority to condemn. Consequently, the County's motion for a judgment declaring that it has the authority to condemn the property at issue is granted.

## C. Condemnation Procedure

Having found that the County has authority to condemn the property, the Court must next determine whether the proper procedures have been followed in this case.

The City argues that even if the County has authority to condemn the property, it cannot do so here because it has failed to comply with Article 5–A, section 268 of the New York County Law regarding procedures to be taken prior to a sewer district acquiring land or improving its facilities, and that the County has failed to comply with the New York Eminent Domain Procedures Law. The County responds that New York County Law section 268 is not applicable to it; rather, Article 11–A, sections 11.54 and 11.55 of the Onondaga County Administrative Code determine the procedure for condemnation. The County further argues in their motion for summary judgment that they are in compliance with the New York Eminent Domain Procedure Law and therefore are entitled to summary judgment.

### i. Article 5–A

The City points to § 268 of the N.Y. County Law, which requires compliance with certain procedures including the preparation of a map and plans for the new facility, an estimate of cost, a public hearing, and approval by the state comptroller for expenditures in excess of the county budget. *See* N.Y. COUNTY L. § 268. The City, citing *Home Builders Ass'n of Central N.Y. v. County of Onondaga*, 151 Misc.2d 886, 573 N.Y.S.2d 863 (N.Y.Sup.1991), claims that because section 268 of the New York County Law provides a comprehensive plan for improvement of sewage facilities, it preempts Article 11–A of the Onondaga Administrative Code.

In *Home Builders Association*, the Court found that the Onondaga County legislature was without authority to pass a *resolution* requiring the payment of fees by buildings that were first time hook-ups to the sewer system. *See Home Builders*, 573 N.Y.S.2d at 864. In so doing, the Court found that the General County Law *and* General Municipal Law had provided counties with specific options in taxing sewer use and that the method used by the County exceeded its authority under the state law.[10] The Court noted that the Onondaga County Administrative Code had adopted one of these means of collecting sewer rents and consequently, the County was without authority to pass a subsequent *resolution* changing the method of collecting rents. *Id.* The County legislature has not sought to act in contravention of explicit New York State Law and County law here. Consequently, *Home Builders* is not determinative of the issue.

The Court starts where it has with regard to each of these statutory conflicts, with section 2 of New York County Law. Consequently, to the extent the provisions of Article 11–A of the OCAC conflict with section 268, the OCAC will control.[11] *See*

---

**10.** It is notable that the Court in *Home Builders* also cited to the Onondaga County Administrative Code in determining the County was acting outside of its authority. *See Home Builders*, 573 N.Y.S.2d at 864 (citing OCAC § 11.70).

**11.** There is no statement in section 268 that its provisions will apply notwithstanding a local law to the contrary.

*Long Island Liquid Waste Assoc. v. Cass,* 115 A.D.2d 710, 496 N.Y.S.2d 527, 528 (2d Dep't 1985)(finding Article 5–A did not apply where county had adopted its own procedures).

Section 11.55 of the OCAC requires the County, when seeking to improve the facilities of the sewer district to prepare maps and plans showing the improvements and the cost of those improvements. Where private land will be specially benefitted by the construction of the plants, the County is required to hold a public hearing on the matter prior to authorizing the acquisition. Finally, the County must file a final determination in the office of the County Clerk and cause notice of such filing to be published at least once in the official paper or papers of the county.[12]

The County submits evidence that maps and plans, including cost estimates, were completed, and that a public hearing was held. *See* ex. MM and NN. There exists no evidence in the record, however, that the resolution was filed with the County Clerk or published in the approved county newspaper in compliance with OCAC 11.55. While the Court can imagine that such details were lost in the voluminous submissions to the Court, the Court cannot grant summary judgment on this issue to either party. In light of the technical nature of the requirement, the Court will allow the County to submit proof of the required filing and publication in a further motion for summary judgment on this issue.

**ii. Eminent Domain Procedure Law**

■ The next issue confronting the Court is whether the County has complied with the applicable Eminent Domain Procedure Law (EDPL). The parties seem to agree that Article 2 of the EDPL governs in the first instance. EDPL section 206 provides in pertinent part:

> The condemnor shall be exempt from compliance with the provisions of this article when:
>
> (A) pursuant to other state, federal, or local law or regulation it considers and submits factors similar to those enumerated in subdivision (B) of section two hundred four, to a state, federal or local governmental agency, board or commission before proceeding with the acquisition and obtains a license, a permit, a certificate of public convenience or necessity or other similar approval from such agency, board, or commission or;
>
> .   .   .   .   .
>
> (C) pursuant to other law or regulation it undergoes or conducts or offers to conduct prior to an acquisition one or more public hearings upon notice to the public and owners of property to be acquired, and provided further that factors similar to those enumerated in subdivision (B) of section two hundred four herein may be considered at such public hearings, or;
>
> (D) when in the opinion of the condemnor ... because of an emergency situation the public interest will be endangered by any delay caused by the public hearing requirement in this article.

N.Y. EM. DOM. PROC. L. § 206(A, C, D). Section 204(B) lists the following factors:

> (1) the public use, benefit or purpose to be served by the proposed public project;
>
> (2) the approximate location for the proposed public project and the reasons for the selection of that location;

---

12. The court notes the similarity in procedures between OCAC § 11.55 and N.Y. COUNTY L. § 268.

(3) the general effect of the proposed project on the environment and residents of the locality;

(4) such other factors as it considers relevant.

The County argues that it has satisfied the exemption requirements of section 206 and, therefore, should be granted summary judgment. The City does not deny that the County may claim an exemption found in 206, but argues that the County has not followed the correct procedures under § 402(B)(3)(a) of the EDPL, because it did not attach a copy of a statement indicating compliance with Article 2 or a statement giving the basis of the exemption from Article 2 with its complaint.

### a. County Meets the Exceptions

According to Section 206(A) of the EDPL, a condemner is exempt from compliance with Article 2 procedures provided that they have submitted factors similar to those in § 204(B) to a government agency before proceeding with the condemnation and have received an approval from such agency. N.Y. EM. DOM. PROC. L. § 206(A) (McKinney's 1979). Here, the County submitted to the EPA an environmental review of the process covering those factors cited in § 204(B). As a result, the EPA approved the project and submitted a Finding of No Significant Impact (FNSI) under the National Environmental Policy Act (NEPA). *Atlantic States Legal Foundation v. Browner*, 2000 WL 1234659, 2000 U.S. Dist. Lexis 12511 (S.D.N.Y.2000). This, then, places the County within the exemption requirement based on the submission to the agency and the FNSI. *In the Matter of Rockland County Sewer District v. J. & J. Dodge, Inc.*, 213 A.D.2d 409, 635 N.Y.S.2d 233, 236 (2d Dep't 1995).

### b. Failure to Comply with Section 402(B)

The City argues, however, that despite the County's compliance with the exemption requirement, the County still must comply with section 402(b), and has failed to do so here. Section 402(B)(3)(a) requires that "[i]n all acquisitions under Supreme Court jurisdiction," prior to filing an acquisition map, the condemner must provide a statement of compliance with the requirements of Article 2 of the EDPL or a "statement providing the basis for the exemption." N.Y. EM. DOM. PROC. L. § 402(B)(3)(a) (McKinney's 2002).

It is clear from the complaint, however, that the County did provide the basis for the exemption. The complaint states in relevant part:

> On March 23, 1999, public hearing on the ACJ Midland Project was held under the National Environmental Policy Act ("NEPA") upon notice to the public and the City. *See* Exhibit E. Factors similar to those listed in EDPL § 402(B) were considered in the NEPA process.
>
> .     .     .     .     .
>
> The above referenced public hearings, funding approval of the EPA and the SURA approval satisfy the public hearing requirements of the EDPL.

Compl. ¶¶ 32, 35, County Ex., Vol. I, Ex. A.

It is difficult to imagine what more the City would require of the County to satisfy the requirement of "a statement providing the basis of exemption from article two..." *See* N.Y. EM. DOM. PROC. L. § 402(B)(3). The County need not use any particular words to indicate that its submissions constitute a statement of exception from Article 2, as long as, in sum and substance, the complaint satisfies the requirement. The substance of the County's complaint does satisfy the requirement of

the statute by claiming that the EDPL was satisfied and provides a basis for that claim. Consequently, the Court finds that the procedures set out in section 402 have been satisfied by the County.

## D. Compensation and Attorney's Fees

### i. Compensation

■ Upon finding that condemnation here is allowed by the County, the City argues that it is entitled to compensation for the land taken for purposes of the sewage treatment plant. The City bases this argument on § 3 of the New York General Municipal Law which states in pertinent part that:

> where property of a municipal corporation...is taken in the exercise of eminent domain for a purpose substantially different from that for which it is held...just compensation...shall be made...as though it were private property.

The City argues that the condemnation is for a substantially different public purpose than that now served by the property and it should therefore be compensated for the property. The County, on the other hand, argues that the purpose is not substantially different because it currently is being used for underground sewer services, and therefore, the City is not entitled to any compensation.

Where land is held in the governmental capacity [13] of the municipal corporation and the sewage treatment plant will substantially change the public purpose of the property, then the municipality is entitled to compensation. *Town of Peru v. State,* 59 Misc.2d 49, 297 N.Y.S.2d 779 (N.Y.Ct. Cl.1969) *reversed on other grounds* 35 A.D.2d 875, 315 N.Y.S.2d 775 (3rd Dep't

1970). If the new use of the property does not, however, substantially change the public purpose for which the property is currently being used, no compensation is necessary. *See Village of Brockport v. County of Monroe Pure Waters Division et al.,* 58 A.D.2d 216, 396 N.Y.S.2d 540, 541 (4th Dep't 1977).

The County argues that the property's current dominant use is for sewer district facilities. The County bases this argument on the fact that there is a main sewer interceptor (MIS), sewer lines, outfalls and a grit chamber that encumber the property. Consequently, the County argues that there would be no substantial change with the installation of the sewer treatment plant.

The City, by contrast, argues that the property is being used as a public street and low-income housing development. Further, the City points to the park and basketball courts that are currently present on the property. As a result, the City argues that there would be a substantial change with the advent of the sewer treatment plant.

The Court finds the County's argument unavailing. Most of the sewage treatment facilities located on the spot lie under the ground at the site. If the Court were to allow the County to claim a similar public use in this instance based on the sewer lines under the property, the County could do so any time sewage treatment facilities existed under the property.

Further, this is not a case where the property was previously used as a sewage treatment plant and it is merely the ownership of the plant that is changing hands. *See Village of Brockport v. County of*

---

13. There can be no real dispute that the land is currently held for some public purpose, whether that be, as the City argues, for low income housing, or as the County argues, for sewer lines. *See Springfield Fire & Marine*

*Ins. Co. v. Keeseville,* 148 N.Y. 46, 53, 42 N.E. 405 (1895) ("When we find that the power conferred has relation to public purposes and is for the public good, it is to be classified as governmental in its nature...").

*Monroe Pure Waters Division et al.,* 58 A.D.2d 216, 396 N.Y.S.2d 540, 541–42 (4th Dep't 1977). Here, a new sewage treatment plant will be built on the property. The building of the plant will inevitably result in a "substantial change" to the use of the property. Consequently, the City is entitled to just compensation for the property.

### ii. Attorney's Fees

Finally, the County argues it is entitled to attorney's fees based on § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and because the City was unreasonable in first supporting and then opposing the project. "[U]nder the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." *Colombrito v. Kelly,* 764 F.2d 122, 133 (2d Cir.1985).

> The only pertinent exception for present purposes is the court's inherent authority to award fees when a party litigates frivolously or in bad faith. The bad faith exception permits an award upon a showing that the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper purposes.... Neither meritlessness alone, nor improper motives alone, will suffice.

*Colombrito,* 764 F.2d at 133 (internal quotations and citations omitted).

Section 1365(d) of the Clean Water Act only authorizes an award of attorney's fees in cases brought pursuant to § 1365. 33 U.S.C. 1365(d). This action was not brought pursuant to that section and therefore the Clean Water Act does not allow attorney's fees here. Further, the County cites no other authority granting it attorney's fees in this matter. The tortured history of this litigation and the back and forth between the parties has been caused as much by the failure of the County to bring the City into the action much earlier as it has been by any change of heart of the City. Consequently, the Court finds no basis on which to award attorneys fees to the County.

### E. All Writs Act

Because this Court finds that the County may condemn the property under New York State Law, the Court does not address the parties' arguments regarding whether this Court has authority to order condemnation pursuant to the All Writs Act despite state law. To the extent the parties seek to have this Court reconsider its decision to join the City of Syracuse under the All Writs Act and to adjudicate the condemnation proceeding in this Court, such motions would be untimely and are not considered here.

### IV. Conclusion

For the foregoing reasons **IT IS OR-DERED**:

1) The County's motion for an declaratory judgment that it has authority to condemn the property in question is **granted;**

2) The County's motion for summary judgment granting condemnation is **denied with leave to renew**. The County shall, within 20 days of the date of this Order, file with the Court and serve on the City of Syracuse proof of the filing and publication as required by OCAC 11.55 along with a further motion for summary judgment.

3) The City's motion for summary judgment precluding condemnation is **denied**.

4) The City's motion for compensation for the City and SURA property is **granted**. The parties shall submit the appropriate documents to allow this Court to determine the value of the property.

5) The County's motion for attorney's fees is **denied**.

**IT IS SO ORDERED.**